| | |
|---|---|
| Sean El Bey, | Civ. No. 18-8092 (KM) (MAH) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| Sean El Bey, | |
| Defendant. | |

## KEVIN MCNULTY, U.S.D.J.:

This matter originally came before the Court upon the submission of a civil complaint (ECF no. 1) and an application to the clerk for entry of default (ECF no. 4).

Pro se plaintiff Sean El Bey, who gave his address as 1485 Thomas Avenue, North Brunswick, New Jersey, filed a complaint stating that he is a national but not a citizen of the United States, citing, *inter alia*, the U.S. Constitution, the Universal Declaration of Human Rights, and the 1836 Peace and Friendship Treaty of Morocco. He seeks to renounce his United States citizenship and be proclaimed "the Race of Moor/Nationality of Americas Aboriginal." He brings the action against "Sean El Bey," residing at Woodbridge Terrace 51K, Woodbridge, New Jersey. (ECF no. 1)[1] The return of service states that defendant Sean El Bey was served at a Woodbridge address. (ECF no. 4.)

---

[1]     The allegations of the Complaint appear to be based on the tenets of the Moorish Science Temple of America, which holds that its members are not citizens of the United States and that their birth names are "constructed" rather than "real." Followers have adopted names, frequently with the designation "Ali," "Bey," or "El" appended. *See United States v. James,* 328 F.3d 953, 954 (7th Cir. 2003); *United States v. Darden,* 70 F.3d 1507, 1517 (8th Cir. 1995); *Bey v. The United States Dep't of Homeland Security,* Civ. No. 10-46, 2010 WL 1644807 (D.N.J. Apr. 23, 2010); *The Great Seal Moorish Science Temple of America, Inc. v. The State of New Jersey,* No. Civ. A. 05-CV-345, 2005 WL 2396311 (E.D. Pa. Sept. 28, 2005).

On May 31, 2018, I noted two fatal jurisdictional defects and ordered the plaintiff to show cause why entry of default should not be denied and the complaint should not be dismissed for want of subject matter jurisdiction.

The initial problem was that Plaintiff was suing himself. This court has jurisdiction only to adjudicate cases and controversies. U.S. Const., art. III, § 2. There is no "controversy" between a person and himself. *United States v. I.C.C.*, 337 U.S. 426, 430 (1949) ("There is much argument with citation of many cases to establish the long-recognized general principle that no person may sue himself. Properly understood that general principle is sound, for courts only adjudicate justiciable controversies. They do not engage in the academic pastime of rendering judgments in favor of persons against themselves. Thus a suit filed by John Smith against John Smith might present no case or controversy which courts could determine."). Still less is it appropriate for a person to obtain a judicial imprimatur for whatever he chooses to allege by "defaulting" and obtaining a "default judgment" against himself. It is simply contrary to the judicial function. Fed. R. Civ. P. 55, which authorizes entry of default, presupposes these basic principles of the judicial system—i.e., that a suit is by one party against another, who must be served in order to be deemed to have notice of the action.

At the time of the Order to Show Cause, I was not certain that the plaintiff Sean El Bey and the defendant Sean El Bey were the same person. That, however, has now been confirmed. (*See* ECF no. 8)

The Order to Show cause noted a second problem, separate and apart from the problem that Sean El Bey was suing himself. The only relief sought in the Complaint is a declaration that the plaintiff, Sean El Bey, be given leave to renounce his U.S. citizenship and be declared "the Race of Moor/Nationality of Americas Aboriginal."

That, I wrote, is not a form of relief that could be obtained in the form of a Court judgment in favor of Sean El Bey against Sean El Bey. I will elaborate.

It is of course possible to renounce one's U.S. citizenship, not by filing a lawsuit, but by following certain procedures prescribed by § 349 of the

2

Immigration and Nationality Act, 8 U.S.C. § 1481.[2] It is not possible, however, to change one's citizenship by obtaining a default judgment against oneself. Nor is it possible to simply relieve oneself of the burdens of citizenship while in

[2]    8 U.S. Code § 1481 - Loss of nationality by native-born or naturalized citizen; voluntary action; burden of proof; presumptions

(a) A person who is a national of the United States whether by birth or naturalization, shall lose his nationality by voluntarily performing any of the following acts with the intention of relinquishing United States nationality—

(1) obtaining naturalization in a foreign state upon his own application or upon an application filed by a duly authorized agent, after having attained the age of eighteen years; or

(2) taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state or a political subdivision thereof, after having attained the age of eighteen years; or

(3) entering, or serving in, the armed forces of a foreign state if (A) such armed forces are engaged in hostilities against the United States, or (B) such persons serve as a commissioned or non-commissioned officer; or

(4)

(A) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, after attaining the age of eighteen years if he has or acquires the nationality of such foreign state; or (B) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, after attaining the age of eighteen years for which office, post, or employment an oath, affirmation, or declaration of allegiance is required; or

(5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State; or

(6) making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense; or

(7) committing any act of treason against, or attempting by force to overthrow, or bearing arms against, the United States, violating or conspiring to violate any of the provisions of section 2383 of title 18, or willfully performing any act in violation of section 2385 of title 18, or violating section 2384 of title 18 by engaging in a conspiracy to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, if and when he is convicted thereof by a court martial or by a court of competent jurisdiction

all other respects remaining a resident and enjoying the benefits of being a "national, but not a citizen" of the U.S.— the status that Mr. El Bey seeks to gain by virtue of this lawsuit.

Thus, for example, in *Lozada Colon v. U.S. Dep't of State*, 2 F. Supp. 2d 43, 44 (D.D.C. 1998), the plaintiff, "a United States Citizen born in Puerto Rico, [sought] to renounce his United States citizenship and yet still reside and remain in Puerto Rico as a Puerto Rican national despite the fact that Puerto Rico is a territory of the United States." That plaintiff (unlike El Bey) went through the process of taking an oath of renunciation at a U.S. consulate in a foreign country. But Section 349, the court wrote, "makes clear that expatriation depends not only on the performance of an expatriating act, but also upon a finding that the individual performed such act 'voluntarily' and 'with the intention of relinquishing United States nationality.' *Id.*; *see also Afroyim v. Rusk*, 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967); *Vance v. Terrazas*, 444 U.S. 252, 100 S.Ct. 540, 62 L.Ed.2d 461 (1980)." In the court's view, that intent was absent:

> While Plaintiff claims to reject his United States citizenship, he nevertheless wants to remain a resident of Puerto Rico. The Immigration and Nationality Act makes it unmistakably clear that Puerto Rico *46 is a part of the United States for such purposes. (See 8 U.S.C. § 1101(a)(38), providing that the term "United States" for the purposes of the statute refers not only to the 50 states of the United States, but also Puerto Rico, Guam, and the Virgin Islands.) Indeed, after attempting to renounce in the Dominican Republic, Plaintiff returned to Puerto Rico without making any effort to be documented as an alien under the Immigration and Nationality Act. In other words, while claiming to renounce all rights and privileges of United States citizenship, Plaintiff wants to continue to exercise one of the fundamental rights of citizenship, namely the right to travel freely throughout the world and when he wants to, to return and reside in the United States.

*Id.* at 45–46.

Mr. El Bey has not gone through the § 349 procedure for renunciation at all. That alone is fatal to his claims here; he has failed to pursue his administrative remedies, and the court therefore lacks jurisdiction. But even if

4

he had, he could not attach conditions to his renunciation. That is, he could not declare himself to occupy the twilight status of a "national, but not a citizen," of the United States, living in this country but not subject to its laws.

Sean El Bey has responded to the Order to Show Cause with a one-page motion for leave to amend the Complaint. (ECF no. 8) The motion is unclear, but apparently he seeks to dismiss himself as plaintiff and to substitute "Sean El Bey Trust/Estate." That entity, he says, is separate from Sean El Bey, the person, although Sean El Bey "is trustee, and real party in interest." This would be a change of nomenclature, not of substance. As Mr. El Bey admits, he is the "real party in interest." Moreover, the switch in parties would only exacerbate the problems with this lawsuit. A trust would be suing to change the citizenship status of its trustee, an unknown cause of action over which this court would have no colorable jurisdiction.

A motion to amend under Rule 15, Fed. R. Civ. P. is to be granted freely. Nevertheless, it may be denied on grounds of futility, *i.e.*, failure to propose an amendment that would survive a motion to dismiss. *Foman v. Davis*, 371 U.S. 178, 182 (1962). I do deny the motion to amend.

The Order to Show Cause provided that failure to supply an adequate response would result in dismissal. I find that Mr. El Bey has not adequately responded to the Court's Order to Show Cause, and therefore will dismiss the case.

## CONCLUSION

For the reasons stated above, entry of default will be denied and the complaint will be dismissed for want of subject matter jurisdiction.

**KEVIN MCNULTY**
**United States District Judge**

5